In re EXECUTIVE AIR SERVICES, a Utah corporation, Debtor.

WILDFLOWER, INC., Appellant,

v.

EXECUTIVE AIR SERVICES, INC., Appellee.

Bankruptcy Nos. 83–00795, 85–C–0525S.

United States District Court, D. Utah, C.D.

June 20, 1986.

R. Kimball Mosier, Mosier & McKean, Salt Lake City, Utah, Eric Damian Kelly, Kelly, Potter & Barshov, Pueblo, Colo., for appellant.

David E. Leta, Hansen, Jones, Maycock & Leta, Salt Lake City, Utah, for appellee.

SAM, District Judge.

This is an appeal from the Bankruptcy Court's denial of the motion by appellant, Wildflower, Inc. ("Wildflower"), to amend that court's Order to include a provision approving Wildflower's application for an 11 U.S.C. § 364(c)(1) superpriority and payment of its claim thereunder, effective *nunc pro tunc* to August 2, 1983. Appellee, the James Lair Trust (the "Trust"), appears on appeal in its position as an administrative creditor of the subject estate.

On review of the parties' briefs and exhibits, this court finds the following facts to be uncontested. Executive Air Services, Inc. ("Executive Air") commenced this action as a Chapter 11 bankruptcy. On June 28, 1983, the Bankruptcy Court conducted a hearing on the approval of a management agreement between Executive Air and Wildflower, Inc. The agreement set out the terms by which Wildflower would attempt to revitalize Executive Air and provided that Executive Air should seek an order awarding Wildflower an 11 U.S.C. § 364(c) superpriority on future advances of cash and supplies.[1] Counsel for Executive Air mailed to all creditors the following notice of hearing on the priority issue:

> The debtor has requested that the court declare certain payments which Wildflower, Inc., a Colorado corporation, proposes making for the benefit of the estate will be "administrative expenses" within the meaning of 11 U.S.C. § 503 and that such expenses will be paid by the estate as priority claims as provided in 11 U.S.C. § 507.

Prior to the hearing, counsel for Wildflower received two copies of the notice and did not object or suggest changes to its form or content. On August 2, 1983, the court issued its written order approving the management agreement without mentioning a superpriority status for Wildflower.

After the June 28, 1983 hearing, Wildflower, along with other entities, began to furnish cash, fuel, supplies, and management service to the Executive Air estate. The other entities that participated in the reorganization scheme have 11 U.S.C. § 364(a) "priority" claims against the estate. This action was subsequently converted to a Chapter 7 bankruptcy.

In October, 1984, well over a year after approval of the management agreement, Wildflower realized it had not been awarded a superpriority position under the Order of June 28, 1983. Wildflower then filed a motion to amend that Order to allow it 11 U.S.C. § 364(c) superpriority status, effective *nunc pro tunc* to August 2, 1983. In a March 27, 1985 hearing, the same judge who approved the management agreement denied Wildflower's Motion, ruling that Executive Air's June 17, 1983 notice to credi-

---

1. The superpriority is addressed in page 2, clause 6 of the management agreement, as follows:

   PAYMENT OF EXECUTIVE'S OPERATING EXPENSES SUPERPRIORITY FOR ADVANCES

   Expenses related to the current operations of Executive, including but not necessarily limited to the management fees referred to in paragraph 4 hereof, shall be considered costs of operating the business of Executive as a debtor-in-possession.

   Executive agrees that it will, contemporaneously with seeking Court approval of this Agreement, seek an order of the Court granting Wildflower a superpriority in the assets of Executive to the extent Wildflower advances cash and/or supplies, fuel and inventory to Executive.

tors was insufficient to allow Wildflower a superpriority.

This court notes at the outset that a *nunc pro tunc* order requires that entry should be made now of acts *actually previously done*, which entry creates the same effect as if the acts had been regularly docketed. Executive Air correctly states that "[w]hile a court has inherent power to amend or correct its records, to make them conform to the actual facts, it is without power to change a record so as to make it show that which did not occur or to cure errors or omissions of counsel." *Slade v. United States*, 85 F.2d 786, 787 (10th Cir. 1936) (footnotes omitted); *See also W.F. Sebel Co. v. Hessee*, 214 F.2d 459, 462 (10th Cir.1954). Therefore, in ruling on the correctness of the lower court's denial of Wildflower's motion for a *nunc pro tunc* order, the threshold question before this court is a factual one, that is, whether in the June 28, 1983 hearing the lower court approved a superpriority for Wildflower. If this court should find that a superpriority was not *in fact* granted at that hearing, it must uphold the lower court's refusal to enter a *nunc pro tunc* order. The court will then examine the legal issues of whether the 11 U.S.C. § 364(c) notice and hearing requirements were met in the proceedings below.

I. *Request for nunc pro tunc order.*

Section 364(c) of the Bankruptcy Code provides in relevant part:

> If the trustee is unable to obtain unsecured credit allowable under § 503(b)(1) of this title as an administrative expense, the court, *after notice and a hearing*, may authorize the obtaining of credit or the incurring of debt—
>
> (1) with priority over any or all administrative expenses of the kind specified in § 503(b) or § 507(b) of this title; ...

(Emphasis added). On the question of sufficiency of notice and hearing under that statute, the court finds controlling the decision in *In re American Resources Management Corp.*, 51 B.R. 713, 721 (Bankr.D. Utah 1985). The *American Resources* court interpreted § 364(c) as requiring that a financing order under that section should only be awarded upon the meeting of two criteria: 1) that all parties be adequately notified of any hearing held on the superpriority claim and 2) that, at hearing, the party seeking the superpriority should make a proper showing of "need and inability to obtain unsecured credit allowable as an administrative expense." *Id.; Cf. In re Texlon Corp.*, 596 F.2d 1092 (2d Cir. 1979).

■ In its analysis of the propriety of entering a *nunc pro tunc* order, the court must first examine the record in light of the second criterion to determine whether Executive Air made the required showing of need and inability to obtain unsecured credit. Clearly, the necessity of obtaining additional financing was shown throughout the hearing, particularly in the statements made by Harriet Styler, counsel for Executive Air. Ms. Styler stressed the immediacy of the need for a scheme to restore Executive Air, claiming it didn't know if it had money to buy the fuel on which it relies for the fuel sales that comprise a large part of its business. (T. 10). However, the transcript reveals no discussion of Executive Air's effort to obtain unsecured credit that would qualify as an administrative expense, and it appears, therefore, Executive Air failed to make the showing required under section 364(c).

■ More importantly, the record does not corroborate Wildflower's claim that a superpriority was actually granted at the June 28, 1983 hearing. At commencement of that hearing, the court stated the purpose therefor was to determine whether the management agreement should be approved. It is important to note that approval of the management agreement did not constitute an automatic grant of the superpriority because the agreement only provided that Executive should *seek* approval of the agreement. The superpriority itself was never specifically and separately addressed.

Wildflower asserts that everyone, including the judge, knew that a superpriority was being sought at the hearing because

Wildflower would not have assumed management of Executive Air without an assurance of a superpriority position on all cash, fuels, and supplies furnished under the agreement. In support of that assertion, the record shows counsel for the tenant company expressed concerns about Wildflower's "first priority lien position" or "superior lien position" as it affected other creditors. (T. 4, 5). However, the only other explicit mention of the superpriority occurred at the conclusion of the hearing when Ms. Styler read the following modification to the management agreement:

> That on or before July 31st, 1983, Wildflower provide disclosure to the court and the creditors' committee and Mr. Hutchinson concerning what contribution in the way of capital and/or fuel and inventory it has made to the debtor during that period for which Wildflower would think it would have a superpriority.[2]

(T. 14). The modification was a response to the lower court's concern about the viability of the management scheme and the degree of protection it afforded other creditors. Nowhere in the recorded proceedings does the court expressly grant Wildflower a superpriority, therefore it should have been no surprise to the parties that the final order reflecting the court's ruling did not address that claim. Furthermore, in her deposition, Ms. Styler admits she withdrew before hearing the pleadings that addressed the administrative priority because she believed they were improperly drawn, that is, inadequate to accomplish the purpose of obtaining the superpriority.[3] Styler deposition at 12. As a result of the withdrawal, the administrative priority matter was stricken from the calendar. *Id.* at 13–15. Ms. Styler further stated that she should have but neglected to file corrected pleadings on that issue. *Id.* at 25, 26.

Based on the foregoing, this court must affirm the lower court inasmuch as no clear error was manifest in its denial of Wildflower's request for entry of a *nunc pro tunc* order because a superpriority was never actually granted at the June 28, 1983 hearing. The court will now examine whether the lower court's ruling should be corrected to award Wildflower a superpriority.

## II. *Sufficiency of notice and hearing.*

■ As set out above, *American Resources* requires that a party seeking a section 364(c) position should give clear and unambiguous notice of that intent and specifically address the superpriority at hearing. *American Resources*, 51 B.R. at 721. Unquestionably, the instant notice and hearing did not meet those criteria. The notice stated Wildflower would seek " 'administrative expenses' within the meaning of 11 U.S.C. § 503" and that the estate would pay the claims as provided in 11 U.S.C. § 507. A claim under those sections essentially places its holder on the same footing with others claiming administrative expenses but a section 364(c) superpriority entitles its holder to payment ahead of other creditors. As the *American Resources* court states, "A Section 364(c)(1) superpriority may affect the rights of administrative claimants to full payment in the event sufficient funds are unavailable by subjecting them to reduction and proration. Those whose claims are subject to subordination are entitled to be fairly advised of what the trustee proposes." *Id.* The instant notice is archetypical of the insufficiency criticized by various courts that have examined this issue, in that it not only omitted reference to a section 364(c) superpriority but expressly stated Wildflower sought an administrative priority

---

2. The record is silent as to whether the parties complied with the terms of the modification by providing the court with the required disclosure information. However, it appears Wildflower's superpriority claim was not brought to the court's attention until the March 27, 1985 hearing at which it was denied.

3. The withdrawn pleading was entitled "Application for Determination of Administrative Expense" and apparently contained the application for the superpriority.

under sections 503 and 507. Further, the very evil to be avoided by adequate notice is present in this case, that is, other creditors would have been disadvantaged by the insufficiency of notice had Wildflower been granted a superpriority at the June 28, 1983 hearing. The court's granting Wildflower a superpriority at this juncture would work the same harm on other creditors, especially where this action has now been converted to Chapter 7, and there exists a strong likelihood that not all Chapter 11 administrative creditors will be paid.

As to the hearing, for the same reasons cited in its discussion of the *nunc pro tunc* order, the court finds mere allusions to a superpriority were insufficient to support Wildflower's claim that a superpriority should have been granted.

Therefore, this court affirms the lower court by holding the June 17, 1983 notice to creditors and the hearing that was the subject thereof did not adequately afford the protection to other creditors that is contemplated in 11 U.S.C. § 364(c) and interpretative caselaw.

### III. *Equitable considerations.*

The court begins here by agreeing with the Trust's argument that the 11 U.S.C. § 364(e) provisions related to reversal or modification on appeal of a section 364(c) authorization is inapposite to this case where no such authorization was ever granted.

Concerning the merits of Wildflower's equitable claims, the court finds most troublesome the evidence that other creditors were aware Wildflower made its advances of money, fuel, and supplies in reliance on its belief it held a superpriority status on sales proceeds accruing during its management period. The transcript of the June 28, 1983 hearing reveals that members of the creditors' committee conducted extensive investigation into Wildflower's background, and that both the committee chairman and a representative offered their unqualified endorsement of the management agreement. (T. 6, 7).

Further, the trustee's report shows that Wildflower's management increased Executive Air sales for a time. Appellant's brief at 11, 12.

However, while recognizing these points, this court is in no position to decide equitable questions because the record is insufficient to permit the factual analysis necessary to determine whether or to what degree other creditors knew of Wildflower's superpriority claim or to weigh the harms to the parties. Furthermore, it appears such information was never presented to the court below, and in the absence of a showing of error committed at the trial level, this court has no basis upon which to remand appellant's equitable claims.

Accordingly, the lower court's decision is affirmed.